Well, may it please the court, I'm Stella Hapkin, representing Ms. James Khabushani, Maziar James Khabushani, in this appeal. And we've provided all the arguments, but I just wanted to reiterate a few arguments. We believe that the bankruptcy court erred when it essentially found under the lesser standard of key, which was that if you fire a pregnant woman and you have the causal connection of time, pregnant, terminated, you're willfully and malicious, no excuse, you're done, 523, A6 is determined. That is not the standard under Geiger, that is not the standard under Sue. Well, let's unpack that a little bit. So, there are two standards, willfulness and malicious. Willfulness, you have to have this sort of enhanced either intent to injure or substantial certainty that injury will occur. And is that the prong you're focusing on in particular in willfulness? Yes, correct. All right. And is it not true that the United States authorities says you're bound to understand the natural consequences of what you do. So, if I push you off a building, I can't say I didn't know you were going to die when you fell 10 stories, correct? To use an outrageous example. That is true. However, in this particular circumstance, you're looking at a completely different situation. You're looking at subjective mindset of this particular debtor. He's got a company that's sinking, sinking fast. He's got very few funds. And at that point in time, he determines to let go three people at the same time. And he lets go of people who are making a great deal of money, who are very experienced, who are likely to get a job very quickly. This is different than Jarrett, where money was actually owed to somebody. Is there evidence or a finding that he subjectively believed that this particular plaintiff would get a new job right away? No, there is not. But it was not provided to me. Okay. So, I guess the other way of putting my question is, how could he not have subjectively known that getting fired would have hurt her? Well, in this particular circumstances, he knew of the plaintiff, I believe, very well. She comes from a wealthy family. She's highly experienced. She's married. So, it wasn't going to be she could get a job the next day. That's possible. He believed that? Yes. And she actually did get a job very quickly thereafter. Now, tie that back to the state court. He made many of these arguments in some fashion in the arbitration, correct? Well, there was a lot of arguments that were excluded because the arbitrator was only focused because under a Tamani claim, all you have to establish is an employee-employee relationship and a causal connection, essentially, that you notify somebody you're pregnant and you're done. You don't have to establish intent. You're done. Well, you don't have to establish the wrongful intent, but you have to establish that that's the reason for the termination, correct? Causal connection is all you have to establish. Right. And he tried to argue in the arbitration that the causal connection didn't exist because he actually terminated her for financial reasons, correct? Correct. And that was excluded. It wasn't excluded. The judge found that wasn't the basis of the arbitrator. He was a retired judge. Right. I mean, I quibble with you about the use of the term excluded because that makes it sound as though the arbitrator didn't consider that point at all. In fact, he made an express finding that that wasn't the reason, correct? I agree. But however, I'm looking at it completely differently. Obviously. Fred, I'm looking at it as a causal connection. He looked at it from the point of view, did she notify me she was pregnant? Yes. Was she terminated at that time? And on that particular day, he looked at it and said, on the day that you terminated this person, you didn't have financial issues. He didn't look at it from the subjective point of view of the debtor who's looking ahead and say, I have 30 days. I have to get rid of all the people I'm paying too much money for. And within two months, everybody's 17 employees are gone. Well, let me ask you this. Are you arguing that he just made the wrong finding, which we can't do anything about? No, I'm not arguing. Or something else? No, I'm arguing. He had evidence, right? That your client was going to people and then saying, well, I don't think she's dedicated to the job or whatever, right? That was in front of the arbitrator, wasn't it? That was in front of the arbitrator, basically. Okay, so he made that decision. In the parlance of the state court standard, it was a, what is it? It's a significant factor in this decision, something along those lines? Substantial factor. Thank you. That's right. Okay. Right. So what are we doing here? If we're just disagreeing with the arbitrator, we're going nowhere. So help me with what do you think we get to do? What I'm saying is that the arbitrator never found intent, willful intent as to this particular debtor that he intended to cause this particular individual damages. When this, when he is terminating other people at the same time, and the arbitrator acknowledges that within several months, all the employees are gone. So when the arbitrator is looking at the one day that he terminated this person, that he had the financial ability to pay, that's just a causal connection as to what? He's not looking further ahead. Where's the debtor in this subjective mind looking at further ahead? But he's not finding that the subjective, the selection of her was based, again, I think, I understand your argument, but I can't quite get there, because isn't it true, the other two people weren't there saying we got fired because we were pregnant. I mean, there's only one pregnant woman involved in this, and she was one of the people who was selected, and the arbitrator said her pregnancy was the reason, not your financial considerations. I mean, it may be that had she been fired with the whole slew of people later, we wouldn't be here. But she was in that first group of fired people. He found violations of all kinds of statutes. Well, only one statute. We don't know what he found. He found that she was terminated based on sex. No elements are discussed what it is that he actually found. All it says is she's terminated based on sex and pregnancy. And there's a strong public policy against that, right? That is correct. Yes, I agree. There is a strong public policy, but not every time you terminate a pregnant woman are you malicious or willful in doing it for a bad purpose. In fact, he didn't find it to be for a bad purpose. They attempted to present that this was done with malice of some sort, tried to get punitive damages, and the arbitrator said, no, there's not enough evidence here of any malice. Did the arbitrator say that there's no evidence of malice or just that he wasn't going to award punitive damages? No, that's what he said. No, actually, the word malice was not used. He specifically said, and I quote, hang on just a second, the evidence presented does not substantiate claimant's request for punitive damages. Does an analysis of a punitive damage award require a consideration of the financial situation of the person who would pay the punitive damages? Maybe, but I don't think we know what he was doing with it because it's not discussed in anywhere. All we have is that the other side presents evidence saying, you know, this is oppressive, malicious, whatever it is, under the section of CCP, I forget what it's called. Malicious, oppressive, fraudulent. Yes, 3294. What is the burden of proof on a punitive damage award under state law? What's the burden of proof? Much higher than under 523A6, I agree. However, it still is, however, it still must be presented, something must be presented in order for him to determine whether there was malice. That was what it was. There's nothing, we don't know what it is that the arbitrator actually was ruling. He was looking at wage and hour claim and wrongful termination. Just because something is wrongful in violation of a statute does not mean it was malicious. So if the only basis for non-dischargeability, if we were looking at this and the basis for non-dischargeability was a punitive damages award, we obviously, or if he was arguing the punitive damages award was dispositive somehow in his favor, we'd say no because we don't know exactly what he did and the standard's different. Does that necessarily compel a result in your favor? No, it doesn't. That's not what I'm saying. It doesn't. But it certainly shows when you have such sparse findings from an arbitrator, it shows you his state of mind, where he's looking at. He was presented with malicious, with elements trying to prove punitive damages and it wasn't successful. So you know that he didn't go there. And under section California Well, do we really? Is it one possibility that he simply looked at the financial situation and found that they weren't appropriate because of the financial situation of the parties who would pay them? I mean, that's at least as probable as your argument. Well, it's probable, but I think it's, if he really believed that, he wouldn't have awarded all those damages against a company that's gone out of business and a person Different metric. Different metric, isn't it? Different burden to prove, different metric. I don't know. I'm not sure about that. I think in section, civil code section 3294, it says that it allows imposition of exemplary action for breach of an obligation not arising from contract, where it's proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. So that's what he was looking at. Whether this person was guilty of oppression, fraud, or malice. And in fact, he was looking not arising from a contract. In this situation, it was arising from a contract or a statute. So he was looking at malice. He had to look at it. Okay. All right. Well, you want to stop now and reserve your time or you may continue. Yes, please. Okay. Thank you very much. All right. Mr. Lesnick. Thank you. Good afternoon, Your Honors. Matthew Lesnick appearing on behalf of the appellee, Kylie Taslitz-Anderson. Before getting to our main core arguments, I think it's important to correct a few points that appellant has made in the papers that I think do not accurately reflect the record. The first one, number one, appellant has asserted in his brief that the bankruptcy court relied only on the arbitration award and not on the transcripts of the arbitration proceedings. That's not correct. In paragraph four of the findings of fact and conclusions of law, the bankruptcy court specifically admitted the transcripts of the arbitration proceeding into evidence over appellant's objection, by the way, and reviewed the transcripts for purposes of determining that the issues relevant to this litigation were fully litigated by the parties at the arbitration proceeding. It's notable, actually, I think, that appellant tried to keep the arbitration transcripts out of the record in the bankruptcy court. And it's important that the bankruptcy judge reviewed the transcripts to verify that the he also noted that, you know, that confirmed that the arbitration proceeding was a three-day trial with 10 witnesses and lots of exhibits. It was a full judicial proceeding. It's not accurate to say that the bankruptcy judge relied only on the arbitration award. Number two, appellant has stated that the arbitrator in the papers may have conflated findings of fact related to the wrongful termination pregnancy discrimination claim with Ms. Anderson's wage and hour claims. And that the quote is from appellant that the state court judgment doesn't say which findings of fact apply to which claim. That's not correct at all. The arbitrator actually denied Ms. Anderson's wage and hour claims and found that the evidence relating to the wage and hour claims was not convincing. So all of the arbitrator's findings relating to intent and wrongful conduct were related to the pregnancy discrimination claim only, had nothing to do with the wage and hour claim. There's no ambiguity in the arbitration award. Appellant's statement is just simply not accurate. Number three, and most importantly, appellant argues that he was not afforded an opportunity to argue any justification or excuse for the termination. And specifically says in the brief, looking again at what was actually tried by the arbitrator, was she terminated because she was pregnant? The parties also were not not trying whether the debtor had just cause or excuse for doing the act which resulted in her termination. And he then states that the arbitrator said nothing about the lack of just cause or excuse because the debtor had no opportunity to meet his burden of showing a just cause for terminating an employee who would be unable to contribute to the financial well-being of a struggling company. And this is the crux of appellant's argument. And it's just completely inaccurate. In fact, pretty much the entire trial in the arbitration was his whole defense was that he fired her for financial reasons. That was the whole trial. And the arbitrator looked at this and the arbitration award is clear. No, I reject that. He did not fire her because of financial reasons. The finances were fine at the time. He fired her because she was pregnant. That's what the arbitrator found. And it would be completely inappropriate for the bankruptcy court to retry that same issue. The arbitrator says there's a whole long quote. It's in our papers. But the most important part of it is that he says that the evidence proves beyond doubt that her termination was because of her pregnancy. The evidence offered by appellant regarding the company's poor financial condition was not convincing. At least at the time of the appellee's termination, the company's finances were not a consideration. So the justification and excuse element was clearly litigated in depth during the arbitration. I was going to say, I think the core of the appellant's position is that the arbitrator didn't have to decide the key question under 523A6. And that is, did he intend to hurt her? Or was he subjectively aware that she was substantially certain to be hurt? Did the arbitrator have to find either of those things? Well, I think it's built into the arbitrator's findings. So if you look, and we briefed this, the malice standard, we can talk about the willful element and the malice element. The malice standard is set forth by the Ninth Circuit in the Ormsby case, and it has four elements. First one is that there's a wrongful act. That was the wrongful termination. The second is that it was done intentionally. I don't think that there's any dispute that he intentionally terminated her. And the court found that he terminated her wrongfully, intentionally. The third is, which necessarily causes injury. And in this case, I think that's obvious when the bankruptcy court found that. He intended to fire her, and the act of firing her and the injury, which is losing your job, are basically the same thing. What if he, to throw a hypothetical at you, what if he knew or subjectively believed that she was going to lose her job on Friday, but she would go to work for another company on Monday? What about that? Yeah, in that case, that might be a situation where he knew that he wasn't causing, or believed that he wasn't causing injury. But there's no evidence to the record of that at all. The only evidence we have, we really only have the arbitrator's findings. Was the arbitrator required to find about her, his knowledge of her lack of future employment prospects? Well, in fact, he did, actually. Because if you look at the arbitrator's award, and you look at the damages components, he awarded her damages for loss of future income. And that was on the... That's different, because that doesn't turn his subjective, the debtor's subjective knowledge that she would suffer those injuries. The arbitrator found she did suffer injuries, I get that. But did the arbitrator find that the appellant knew that she would suffer those injuries? I certainly think that the evidence shows that he knew or reasonably should have known that a woman who was several months pregnant was going to have a difficult time getting rehired. Is reasonably should have known sufficient under A-6? Doesn't it have to be subjectively knew that she would suffer the harm? I think that these, what the subjective factor means, what subjective means, it can be inferred from the facts. In other words, you're not required to get the debtor to admit that he knew that. You can infer it from the circumstantial evidence. I would completely agree with you if the court held trial. Exactly. And made that finding after a trial. But here he reviewed, he relied entirely on the arbitrator's findings. And the arbitrator wasn't required to find anything about his subjective intent to injure or subjective knowledge of the likelihood of injury. Right? The arbitrator was required to find that he terminated her wrongfully. And the arbitrator found that she had loss of employment. And yeah, I mean, I don't know that the arbitrator made that express finding. I think I would have to concede that. Yes. But I think it would be pretty incredible for him to get up and try it at a second trial. I'm with you there. I had no idea. The question is, how did Judge Russell impute that? I'm sorry, I didn't hear that. Was Judge Russell entitled to impute that piece? Because he basically said, look, we're done here. This is preclusive. Right. I'm sorry, go ahead. Yes, I think one other thing I should have mentioned before with the arbitration award, another component of the damages was for emotional distress. And I think that in finding the emotional distress damages, the arbitrator was making a finding that there was actual intent that goes beyond, you know, reasonable knowledge. So I think that's how Judge Russell can rely on the arbitration award for that. Can I take you to the last thing that we discussed with your colleague, which is the punitive damage award? Yes. And you would agree that any ambiguity in this award has to be construed against your client, correct? In applying issue preclusion. For issue preclusion purposes, yes, that's correct. All right. So why doesn't the rather strange, after we go through this whole thing, you didn't do it because of money, but I'm not going to do any punitive damages. The record doesn't support it. With no explanation. She argues, maybe not these words, but I'm going to use them for, that that injects the necessary ambiguity into this, that issue preclusion is inappropriate. Why is that wrong? It's wrong because punitive damages are 100 percent discretionary. The court or the arbitrator can refuse or decline to award punitive damages for any reason at all or no reason. And so the absence of punitive, if he had awarded punitive damages, we would know that he found that there was some degree of malice, but the absence of an award of punitive damages doesn't tell us anything. Now, I would agree with you if he'd said, I'm exercising my discretion not to award them, or if he'd said, you know, notwithstanding the evidence, I'm not awarding them. What he says is the evidence presented does not substantiate the request for punitive damages. Isn't that a little bit more ambiguous? It's ambiguous, but again, I don't think it tells us anything. And I guess I would come back to the point that Your Honor made during Ms. Hopkins' argument, which is that another one of the reasons he may have declined to award punitive damages may have been the financial condition of the debtor and his company, or it could have just been that he felt that the actual damages were sufficient in his mind. I mean, it really doesn't need a reason. And so I don't think the absence of punitive damages tells us anything. So the last element, the fourth element of the malice test under Warmsby is that the wrongful act is done without just cause or excuse. And that's the same argument that I was discussing earlier, which is that that was actually litigated in the arbitration and the court found that there was no justification or excuse. He put that forward as his defense for financial reasons. The arbitrator rejected it. It was confirmed by the state court. It's in a state court judgment. Is it fair to say that if we were to send it back for trial, we wouldn't be trying that? At most, we'd be trying whether in firing a woman while she's pregnant in a situation where she didn't get immediate employment, he honestly believed that wouldn't be harmful. I mean, that seems to me, I mean, that's, because I think they're arguing that that last prong is what you'd try, and I don't see it. He did find there was no just cause or excuse. If this court were to remand this to the bankruptcy courts, certainly I would argue for that very limited issue. However, I don't know that that's exactly what Appellant is arguing here. I think Appellant is arguing for something much broader. She is, I think, correctly. But I'm saying, I think if anything, it's narrower. Because there's a just cause or excuse. They offered a just cause or excuse being the economic state of the company, and the arbitrator specifically rejected that. Correct. Okay. Right. Okay. So, the other point I wanted to address is this Geiger case. And Appellant argues that Geiger, the U.S. Supreme Court case, really changed the state of the law and made the In Re G case, the earlier BAP decision, obsolete. And I think that's not accurate at all. So Geiger, I mean, it's important to look at the facts of Geiger. Geiger was a case where you had a doctor, the debtor was a doctor, who committed malpractice. He prescribed the something like that. And nobody was trying to argue that this guy intended to hurt his patient. That was not even an issue. It was simply a malpractice case. It was a negligence case. And the Supreme Court held, well, simple near negligence is not sufficient for 523 A6 purpose. There has to be an intent to injure. And so, I don't think anything about Geiger changes the In Re G case. And in the In Re G case, the bankruptcy appellate panel in the Ninth Circuit found that a discrimination finding, and in that case, I think there weren't even any findings of fact at the bankruptcy court level, but the BAP found that a finding of discrimination implicitly met the willfulness requirement and satisfied 523 A6. And then I said, I think I said that my last point was my final one, but I lied. There's one more. So, appellant has also argued that there's this sixth element of collateral estoppel that the bankruptcy court failed to take into consideration under the Luceno case, the California Supreme Court case. And the first thing I'd say is that it's actually not an element of the test. It's still the five element test. It's an additional consideration that the court has the discretion to consider if it And once again, I think it's important to look at the case. And I know I'm running out of time, but the Luceno case was a criminal case involving indecent exposure and the party was arguing that his probation hearing should be a collateral estoppel basis for his criminal case. I don't think that has anything to do with the current situation. And I see that I'm just about out of time. So, I will stop there unless the panel has any more questions. I have none. Anyone have a ten-second question? No. Thank you very much for your argument. Ms. Hopkins. Yes, Your Honor. I would like to address the first argument that counsel had stated that we improperly stated that the court did consider the transfer. At page four of the transcript, that Russell specifically stated, as far as the transfer, I'm going to admit it, but nobody's really directed me to any particular portion. The only reason I'm considering the transcript in the numerous, I think, three days before it is for anything in particular, because I don't think anybody really pointed out other than the findings or course of the arbitrator. I'm only looking at it whether it's fully litigated. So, it's not a question that he actually sat down and read the whole transcript and considered the arbitration. And that's stated in other parts of the transcript. But it's fair to say he had it in front of him, and he expresses as a fact that he's looked at it, he said, for a narrow purpose, because somebody should have pointed me to something very specific if they wanted to. I see, I agree with your opposing counsel that that stands for the proposition that he looked at it. Now, none of us know how it's fair to say he didn't consider it. To address what counsel was stating, that the sixth element is discretionary, I have seen in all other cases where it's not discretionary. So, I don't know why that would be all of a sudden discretionary. Well, isn't it something that we, the Ninth Circuit just last week affirmed us in a case where we said, that's something you should look at, but we're just as capable as anybody else of doing that analysis. So, to the extent it's not explicit on the record, and there's nothing that's directly contrary to public policy, we can make that determination. So, what would be a public policy concern that would rise to the level of counterbalancing the fact that we had a three-day arbitration, we had judicial process in affirming it, we had all the things that make this a final judgment under state law, why is there a public policy consideration that would require us to reject issue preclusion? Well, in this particular circumstance, as I stated earlier, the arbitrator was looking at a runful termination claim, which has very different elements to a 523A6 claim for willful and malicious. And that was not looked at by bankruptcy court. In my opinion, it wasn't looked at. Well, that just means that preclusion wasn't appropriate, right? Correct. Okay. But that isn't a public policy reason why. That would be under one of the other prongs of issue preclusion. I'm asking a more directed question, which is, from a public policy perspective, if issue preclusion is otherwise appropriate, why would the issue preclusion test not work here? Do we have a biased arbitrator, for example? There's no evidence of that. No, we don't have that. But what we have is that sparse findings that don't allow the every case that had a trial, including me, it had a trial. Are you suggesting that arbitration isn't a basis for issue preclusion under California law? I'm not. I'm saying that if you have identical elements, you don't need it. But you don't have identical elements in a runful termination case. Not every runful termination of a pregnant woman warrants the findings of willful and malicious conduct. That would be a strict liability standard, which doesn't exist. It doesn't exist. Not in the Ninth Circuit, anyway. Correct. It doesn't exist in the Ninth Circuit. It might be in the Second Circuit, but not in the Circuit. And under Sue, the appellant was entitled to have due process to present his subjective state of mind. And that was not provided because that wasn't considered. That wasn't necessary for the arbitrator's purposes. And so to issue preclusion to prevent my client from having the ability to present his subjective state of mind as to what occurred and why he did not intend any malice towards this particular individual was not provided to my client. And I believe that issue preclusion should not have been granted. All right. Thank you very much for your good arguments. We appreciate them. And we will take this matter under submission and carefully consider it. Thank you. Thank you.
judges: Taylor, Faris, Laferty